## Case No. 15,237.

UNITED STATES v. GORMAN.

[4 Cranch, C. C. 574.] [1]

Circuit Court, District of Columbia. March Term, 1835.

LOTTERIES—SELLING TICKETS—STATUTES—REPEAL.

The power, given to the corporation of Washington city, by its charter of 1820, "to provide for licensing, taxing, and regulating" "vendors of lottery tickets;" and the power, given by the same section of the same charter "to restrain or prohibit" "lotteries," and the by-laws of January 4, 1827, and July 12, 1831, seem to have repealed the 2d section of the act of Maryland of 1792, c. 58 [2 Laws Md. 189], so far as it was in force in the city of Washington.

This was an indictment [against J. B. Gorman] under the 2d section of the Maryland law of 1792, c. 58, for offering to sell and actually selling a ticket in a lottery "not authorized by the legislature of the state of Maryland, nor by the congress of the United States, called the Delaware and South Carolina Consolidated Lottery," against the form of the statute, &c.

Mr. Jones, for defendant, contended that the charter of the city of Washington repealed the second section of the Maryland

---

1 [Reported by Hon. William Cranch, Chief Judge.]

law of 1792, c 58, adopted by the act of congress of the 27th February, 1801 (2 Stat. 103), concerning the District of Columbia, so far as it was applicable to the city of Washington.

By that section of the Maryland law, it is enacted, that if any person shall sell, or offer for sale, within that state, any ticket in any lottery not authorized by the legislature of that state, or by the congress of the United States, he shall forfeit for every such ticket sold, or offered for sale, £10 current money, to be recovered by bill of indictment.

By the seventh section of the charter of the city of Washington, power is given to the corporation. "to provide for licensing. taxing, and regulating," "vendors of lottery tickets," and "to restrain or prohibit lotteries."

On the 4th of January, 1827, the corporation passed a by-law "to restrain and prohibit certain lotteries." The first section forbids private lotteries; the second prohibits the drawing of any lottery not authorized by act of congress, or of the corporation. The third section provides that no licensed vendor of lottery tickets. or other person, shall sell any ticket in any lottery not specially permitted and authorized by some law of some state or territory of the United States, or law of congress of the United States, or act of the corporation, under the penalty of the $50 for every offence. &c. The by-law of July 12, 1831. prohibits the exercise of the business of lottery-ticket vendor without license, for which $100 must be paid.

Mr. Jones cited Hawkins v. Cox [Case No. 6,243], in this court in June, 1819, and Thompson v. Milligan [Id. 13,969], in June term, 1820.

Mr. Key, contra. The charter of 1820 (section 7) has no negative words; it is all affirmative, and not inconsistent with the then existing law; both may stand together; both may prohibit the same thing under different penalties. The corporation has power to license and regulate vendors of lottery tickets; but only to restrain and prohibit, not license, lotteries. In the great lottery case of Clark v. Corporation of Washington [12 Wheat. (25 U. S.) 40], in the supreme court, it was admitted on all hands that the power given to the city did not repeal the law of Maryland. Congress might have repealed the law of Maryland, and might have given that power to the city; 'but the question is, have they given it, and whether the corporation has exercised: it. Has congress given the city the power to license all sorts of lottery tickets? They could not mean to give the city the right to license the sale of illegal tickets, but only tickets vendible by law. There were tickets the sale of which was lawful. The same power is given over gaming, which this court has decided did not repeal the general law of the land against gaming, and that the power was cumulative, so that the party may be liable to the Maryland penalty and the

city penalty both. If the corporation had the power to repeal the Maryland law, they have not yet exercised it. They have not said what tickets it should be lawful to sell. The corporation had only power to license and tax the business of a vendor of lottery tickets. not to authorize the sales of tickets the sale of which was prohibited by law. It is not like the case of tavern licenses, for in that case there was nothing left for the Maryland law to operate upon.

Mr. Jones, in reply. It is not necessary to contend that this charter repeals the Maryland law; the only question is whether the corporation has not the power to license the sales of such tickets in the city.

THE COURT (CRANCH, Chief Judge, not giving any opinion, as he wished to consider the several charters and by-laws, and the cases already decided by this court) stopped Mr. Jones, saying they were satisfied that the license of the corporation authorized the sale.